Merrimack, }
March 3, 1908. }

## BICKFORD *v.* BICKFORD.

Under section 18, chapter 175, Public Statutes, the court has power to revise and modify an order as to custody and maintenance of a child, made in accordance with an agreement of the parties to a proceeding for nullity of marriage.

The mere fact that a woman entered into a void contract of marriage during the lifetime of her lawful husband does not conclusively prove that she is " the guilty party," within the meaning of section 13, chapter 175, Public Statutes.

Where a decree has been made annulling a marriage and providing for the custody and maintenance of a child, an attempt to question its validity

upon a subsequent application for an extension of the allowance is a collateral and not a direct attack upon the judgment of nullity.

The superior court may entertain a petition for the annulment of a marriage which is made absolutely void by statute.

PETITION, for the extension of an order made upon a decree of nullity of marriage. Transferred from the April term, 1907, of the superior court by *Chamberlin,* J.

The original petition was filed by the plaintiff, Nellie F. Bickford, in October, 1903, and alleged that at the time of her marriage to the defendant she had a former husband living, who, as she had been informed and then believed, had secured a divorce from her; but that at the date of the petition she was informed and believed that no such divorce had been secured. Upon this petition there was a decree annulling the marriage and an order, based upon an agreement of the parties, that the defendant pay to the plaintiff $30 a month for the support, care, and education of Arthur F. Bickford, the child of their marriage, until he should arrive at the age of fourteen years,—the defendant to have access to Arthur F. at reasonable times. The child reached the age of fourteen years in July, 1907.

In April, 1907, the plaintiff petitioned the court for an extension of the order. The defendant appeared, and a hearing was had at which the question litigated was the reasonableness of the sum named in the order. The following decree was entered: "Order extended for two years from the fourteenth birthday of Arthur F. Bickford." The defendant objected that the court was without jurisdiction over the subject-matter of the decree, and moved that the order be vacated for that reason. The court then filed an order which, after reciting the previous order and stating that a full hearing on the merits had been had, concluded as follows: "This order is now amended to read as follows: Ordered, that the defendant pay to the plaintiff the sum of thirty dollars on the last day of each month until Arthur F. Bickford is sixteen years old, said defendant to have access to said Arthur F. Bickford at all reasonable times. This order is not based upon any agreement of the parties; neither was the above quoted order."

The defendant excepted on the ground that the court has no jurisdiction of the subject-matter and no authority to impose upon the defendant any order for support under the circumstances stated in the original petition for annulment.

*Albin & Sawyer,* for the plaintiff.

*Henry F. Hollis,* for the defendant.

PARSONS, C. J. The court had power to revise the order originally made as to custody and maintenance of the child, and to make such new orders with reference thereto, or as to alimony or an allowance to the wife, as might be necessary. P. S., c. 175, s. 18; *Wallace* v. *Wallace, ante,* 256. So far as the order excepted to relates to the custody of the child of the annulled marriage, it was authorized by section 13, chapter 175, Public Statutes: "In all cases where there shall be a decree of divorce or nullity, the court shall make such further decree in relation to the maintenance, education, and custody of the children as shall be most conducive to their benefit." So far as it provides for an allowance to the wife, it is supported by the following section (s. 14): "Upon a decree of nullity or divorce, the court may restore to the wife all or any part of her estate, and may assign to her such part of the estate of her husband, or order him to pay such sum of money, as may be deemed just." The defendant contends that the order cannot be supported under the final clause of the preceding section, which, immediately following the portion above quoted, is: "And may order a reasonable provision for their support to be made by the guilty party, or out of his estate."

The superior court appears to have heeded the objection of counsel and to have substituted for the provision for the child's support, under which it is claimed the order could be made against the "guilty party" only, an allowance to the wife, as to which the statute contains no such provision. *Cross* v. *Cross,* 63 N. H. 444, 446. The present order makes no reference to the support of the child. The only objection that appears to it is that it is not warranted by the pleadings, as the relief given differs from that asked for in the present proceeding. No objection is made on this ground; but if made, it can be obviated by an amendment of the petition. But assuming that the order was intended to provide for the support of the minor child of the parties as matter of law (as it was doubtless expected it would as matter of fact), and reference to the support of the child was omitted from the order by accident and not by intention, the order is not beyond the power of the court upon the facts stated. It is urged that such an order could not be made against the defendant unless the defendant was the "guilty party." Whether this language was intended to apply to proceedings founded upon a decree of nullity may be open to doubt; but assuming that it does, whether the defendant was or was not the party through whose guilt the illegal marriage was contracted was a question of fact. Bish. Mar. & Div. (1st ed.) 267. If there was no evidence of the fact before the court, it was the duty of the defendant to call attention to that fact before the case was submitted, if he

relied upon it as a defence. Having submitted the case without objection to the insufficiency of the evidence, the objection comes too late after verdict. *Chapman* v. *Company, ante,* 424; *Farnham* v. *Anderson, ante,* 405.

But it is claimed that, as the plaintiff's prior undissolved marriage rendered the marriage between the parties void, she must be regarded as the guilty party. It is clear that she was the party ineligible to enter into the contract; but that the legislature intended to make ineligibility to marry, rather than moral fault, the ground upon which the support of the children of the marriage should be imposed upon one of the parties, is not probable. The defendant in this case may be responsible for the plaintiff's belief that her former husband had secured a divorce. He may have entered into the marriage knowing that there was no divorce and that the plaintiff believed there had been. See *Bonaparte* v. *Bonaparte,* [1892] P. D. 402. To call the plaintiff the guilty and the defendant the innocent party under such a state of facts would be such a perversion of language that it cannot be considered to have been within the legislative purpose. There is no evidence of such a state of facts in this case; but the defendant made no issue on the question of his guilt, if that was material, and did not object to the absence of evidence of the fact when he had his day in court, and cannot now object that the trial court has construed the absence of objection on this ground as an admission that he is the guilty party, so far as his guilt is necessary to sustain the order made.

The defendant further contends that the order as to custody and support, or custody and alimony or allowance, is invalid because, as he says, upon the allegations of the original petition the court was without authority to make the decree of nullity upon which the order is founded, and claims that such objection is a direct attack upon the judgment of nullity. "A direct attack upon a judicial proceeding is an attempt to avoid or correct it in some manner provided by law." Van Fleet Col. At., *s.* 2. Such attack upon a judgment improperly rendered may be made by a motion to bring forward the action and vacate the judgment. "If the defendant is entitled to relief, this is the appropriate form of remedy. It is comparatively speedy and inexpensive." *Clough* v. *Moore,* 63 N. H. 111, 113; *Moore* v. *Carpenter,* 63 N. H. 65; *Reed* v. *Prescott,* 70 N. H. 88. If a court has jurisdiction of the parties and the proceeding, its judgment, however erroneous, is valid until reversed or set aside and cannot be collaterally attacked. *Spaulding* v. *Groton,* 68 N. H. 77, 78; *Fowler* v. *Brooks,* 64 N. H. 423, 424; *Lawrence* v. *Smith,* 45 N. H. 533. The revisory power over orders as to alimony, allowance, and custody made upon a

decree of divorce or nullity, given by section 18, chapter 175, Public Statutes, does not open upon an application thereunder the decree of divorce or nullity upon which such orders may have been based. *Ela* v. *Ela*, 63 N. H. 116, 121; *Folsom* v. *Folsom*, 55 N. H. 78, 81. There has been no application by either party to revise the decree of nullity, and no ground has been suggested upon which a new trial could be granted. The defendant's objection to the competency of the decree of nullity as a foundation for the order to which he excepts is a collateral—not a direct—attack upon the judgment. Van Fleet Col. At., *ss.* 3, 17.

As there is no question of jurisdiction of the parties, the only ground upon which he can sustain the claim that the decree is void is the want of jurisdiction of the court by which it was made over the subject-matter of the suit. Such jurisdiction is conferred by article 75 [76] of the constitution: "All causes of marriage, divorce, and alimony . . . shall be heard and tried by the superior court, until the legislature shall by law make other provision." This jurisdiction has not been taken away by the legislature; on the contrary, it is provided by section 4, chapter 204, Public Statutes, that "the court, at the trial terms, shall take cognizance . . . of petitions for divorce, nullity of marriage, alimony, custody of children, and allowance to wife from husband's property for support of herself and children." By the act of 1901, establishing the present organization of the courts, the superior court are given "original jurisdiction of all actions, appeals, processes, and matters and things" which were then cognizable by the supreme court at the trial terms. Laws 1901, *c.* 78, *s.* 2. The proceeding was a petition for nullity of marriage—a marriage cause, in the language of the constitution; the superior court had, both by the constitution and the statute, power to hear and determine it. The decree made therein, if erroneous, is not void and cannot be attacked collaterally.

The defendant relies upon sections 1 and 2 of chapter 175 of the Public Statutes, which are as follows: "Section 1. All marriages prohibited by law on account of the consanguinity or affinity of the parties, or where either has a former wife or husband living, knowing such wife or husband to be alive, if solemnized in this state, shall be absolutely void without any decree of divorce or other legal process. Sect. 2. If any doubt exists whether any marriage is void, or as to the effect of any former decree of divorce or nullity between the parties, a libel may be filed as in other cases, and a decree of divorce may be made."

The sections first appear, substantially in their present form, in 1842. R. S., *c.* 148, *ss.* 1, 2. The first section makes void a marriage within the prohibited degrees of consanguinity or affinity,

which otherwise might be held to be only voidable. *Hayes* v. *Rollins*, 68 N. H. 191. As to a marriage between parties one of whom is then married, the statute is a statement of the common law by which such a marriage is a mere nullity—absolutely void. 1 Bl. Com. *436; 2 Kent 79; Bish. Mar. & Div., ss. 200, 201, 205. The second section substitutes the more accurately designated decree of nullity for the decree of divorce in such cases authorized by the act of 1791 (Laws, *ed.* 1830, *p.* 157; Laws, *ed.* 1797, *p.* 295), but does not in terms confer jurisdiction upon the court to determine such causes, or deprive the court of power otherwise existing. *True* v. *Ranney*, 21 N. H. 52, 55; *Keyes* v. *Keyes*, 22 N. H. 553, 555. There appears to be no express mention in the statutes of the jurisdiction of the court over causes for nullity of marriage, until 1867 (G. S., *c.* 189, *s.* 2); but the court in *True* v. *Ranney*, *supra*, considered " the power of the court to make such a decree and to regulate the mode of procedure " as beyond doubt—a conclusion reaffirmed in *Keyes* v. *Keyes*. In view of these decisions and the provisions of the statutes cited *supra* now in force, the jurisdiction of the court over causes of nullity of marriage, without reference to the sections cited by the defendant, is too clear to be open to discussion.

If a marriage is void, strictly no proceedings are necessary, since the invalidity of such a marriage may be relied upon in any court and in any proceeding between any parties, whether the question is directly or collaterally in question. *Emerson* v. *Shaw*, 56 N. H. 418, 420; *Mountholly* v. *Andover*, 11 Vt. 226; Bish. Mar. & Div., *s.* 46. But the fact that the marriage was known to be void did not take away the power of the ecclesiastical court in England to declare it invalid. *Andrews* v. *Ross*, L. R. 14 P. D. 15, 16, and cases cited. Although there may be no doubt in the minds of the parties, " yet, practically, it is often of the very highest importance, both to individuals and to the community, that there should be a judicial adjudication in reference to a void marriage. For then the question of the *status* of the parties and their children is put at rest, while the witnesses are alive; and the former are justified, in the eyes of the community, in entering into a second marriage." Bish. Mar. & Div., *s.* 262; Stew. Mar. & Div., ss. 50, 139, 140, 143; 2 Kent 76; *Pingree* v. *Goodrich*, 41 Vt. 47, 49; *Rawson* v. *Rawson*, 156 Mass. 578, 580; *Wightman* v. *Wightman*, 4 Johns. Ch. 343, 345; *Patterson* v. *Gaines*, 6 How. 550, 592.

*Exception overruled.*

Young, J., did not sit: the others concurred.