[No. 10352.   Department One.   October 7, 1912.]

Amelia Sortore, *Respondent*, v. James S. Sortore, *Appellant*.[1]

Divorce—Complaint—Amendment. It is not error to allow a complaint for a divorce to be amended to set up a cause of action for the annulment of the marriage.

Marriage—Annulment. Under Rem. & Bal. Code, § 983, providing that when there is doubt as to the validity of a marriage either party may apply for a decree of nullity, a divorced woman who remarries within six months, while incapacitated, may maintain the action where she did not know that the marriage was illegal, and was less in the wrong than the husband, who knew the facts as to the divorce.

Husband and Wife—Void Marriage—Community Property. A marriage between parties prohibited from contracting the marriage is void *ab initio*, and property acquired cannot be community property.

Marriage—Annulment—Disposition of Property. Upon the annulment of a void marriage, it is not an abuse of discretion to award to the plaintiff property which belonged to her prior to marriage, and upon which she had paid all taxes, where the improvements placed thereon by the defendant added little to its value, and he was paid for the greater part of his work, and had abused the plaintiff and failed to properly provide for her.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered November 13, 1911, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action for divorce. Affirmed.

[1]Reported in 126 Pac. 915.

*Vince H. Faben,* for appellant.

*Higgins, Hall & Halverstadt* (*Hyman Zettler,* of counsel), for respondent.

CROW, J.—The plaintiff and defendant were married at Victoria, British Columbia, on December 3, 1901. By her original complaint, plaintiff asked a decree of divorce. Against defendant's objection, she was permitted to file an amended complaint, in which she alleged that for many years she and one Lorenz Kratz were husband and wife; that on November 7, 1901, she obtained a decree of divorce from Lorenz Kratz, in the superior court of King county, which decree prohibited her from contracting marriage with any third party within six months from its date; that she was then informed and believed that her marriage to a third party without the state of Washington, valid where the ceremony was performed, would be valid in this state; that so believing, she and defendant went to Victoria, British Columbia, where they were married on December 3, 1901; that they immediately returned to this state; that she had no intention of evading the law of this state; that defendant knew of her decree of divorce from Lorenz Kratz, and the date of its entry; that at his solicitation and request plaintiff and defendant were married in Victoria; that the marriage then was, and still is, valid under the laws of British Columbia; that plaintiff then owned, and still owns, certain real estate in the city of Seattle; that defendant has failed to support plaintiff; that he has been guilty of habitual drunkenness and extreme cruelty; that plaintiff and defendant lived as husband and wife in this state from the date of their marriage until October 19, 1909; that when plaintiff commenced this action and asked a divorce, she did not inform her attorneys that she had been married to defendant within six months after the entry of her decree of divorce, and that she did not then know her marriage to defendant was void under the laws of this state.

Plaintiff, in her amended complaint, asked that a decree be entered annulling her marriage to defendant, adjudging the real estate to be her separate property, and awarding the same to her. Defendant by answer admitted the marriage at Victoria, B. C., on December 3, 1901, denied that he then knew plaintiff had been divorced for less than six months, denied any wrongful acts upon his part; alleged that the plaintiff represented to him that she had been divorced for more than six months; alleged that the marriage ceremony was performed in British Columbia at her instance and request, and further alleged that the record title to the real estate mentioned in the complaint stood in the name of plaintiff's daughter in trust for plaintiff; that it was agreed between plaintiff and defendant that after their marriage the real estate should be conveyed to the plaintiff; that defendant should improve it so as to increase the rental value; that it should thereupon become community property; that it was so conveyed to plaintiff after the marriage; that defendant expended large sums of money, and performed personal labor in its improvement, and that it is now the joint property of plaintiff and defendant. By the prayer of his answer, the defendant asked a dismissal of the amended complaint. The reply denied the affirmative allegations of the answer. The trial court made findings sustaining the allegations of the amended complaint, entered a decree annulling the marriage, and awarded the real estate to plaintiff. The defendant has appealed.

Without discussing the evidence, which is conflicting, we will state our conclusion that it sustains the findings of the trial judge, which will not be disturbed. Appellant insists that the trial court erred in permitting the respondent to file an amended complaint, changing the form of her action from one for divorce to one for annulment of the marriage, and that respondent cannot ask an annulment as she is the party whose incapacity invalidated the marriage under the laws of this state. We find no merit in these contentions. In *Buck-*

*ley v. Buckley,* 50 Wash. 213, 96 Pac. 1079, 126 Am. St. 900, we said:

"It is further contended by appellant Andrew Buckley that, inasmuch as Mary Buckley's complaint herein was one as in an action for divorce, while in her reply to appellant's answer she prayed for a decree of annulment of marriage, the latter prayer being granted by the court, there was such a variance as should prevent her from having any relief in this action. We do not think this contention is meritorious. 25 Cyc. 900; *Werner v. Werner, supra.*"

See, also, *Barth's Adm'r v. Barth,* 102 Ky. 56, 42 S. W. 1116, 80 Am. St. 335.

Not only was it proper to permit an amendment to the complaint, but under the evidence it was also proper to enter a decree of annulment on respondent's application, although her incapacity invalidated the marriage under the laws of this state. The evidence shows that respondent did not know her marriage to appellant, solemnized in Victoria within six months after the entry of her decree of divorce from Kratz, would be void in this state; that appellant did know she had been divorced for less than a month; that he did advise and induce her to have the ceremony performed in British Columbia; that they both believed such marriage, being valid in British Columbia, would be valid in this state, and that respondent, although the incapacitated party, was less in the wrong than appellant. Rem. & Bal. Code, § 983, provides that:

"When there is any doubt as to the facts rendering a marriage void, either party may apply for, and on proof obtain, a decree of nullity of marriage."

This section is explicit and sustains the decree. The fact that under Rem. & Bal. Code, § 991, and the ruling thereon in *State v. Fenn,* 47 Wash. 561, 92 Pac. 417, 17 L. R. A. (N. S.) 800, the marriage was void in this state, is no reason why a decree annulling the marriage, declaring it void, and adjudicating the status of the parties should not be entered.

"If a marriage is void, strictly no proceedings are necessary, since the invalidity of such a marriage may be relied upon in any court and in any proceedings between any parties, whether the question is directly or collaterally in question. *Emerson v. Shaw*, 56 N. H. 418, 420; *Mountholly v. Andover*, 11 Vt. 226, 34 Am. Dec. 685; Bish. Mar. & Div. § 46. But the fact that the marriage was known to be void did not take away the power of the ecclesiastical court in England to declare it invalid. *Andrews v. Ross*, L. R. 14 P. D. 15, 16, and cases cited. Although there may be no doubt in the minds of the parties, 'yet,' practically, it is often of the very highest importance, both to individuals and to the community, that there should be a judicial adjudication in reference to a void marriage, for then the question of the *status* of the parties and their children is put at rest, while the witnesses are alive; and the former are justified, in the eyes of the community, in entering into a second marriage.' Bish. Mar. & Div. § 262; Stew. Mar. & Div. §§ 50, 139, 140, 143; 2 Kent 76; *Pingree v. Goodrich*, 41 Vt. 47, 49; *Rawson v. Rawson*, 156 Mass. 578, 580; *Wightman v. Wightman*, 4 Johns. Ch. 343, 345; *Patterson v. Gaines*, 6 How. 550, 592." *Bickford v. Bickford*, 74 N. H. 448, 69 Atl. 579.

A decree annulling a void marriage may be entered in an action in which a divorce has been asked. 26 Cyc. 900; *Lynch v. Lynch* (R. I.), 83 Atl. 83.

Appellant further contends that, in awarding the real estate to respondent, the trial judge made an unjust and inequitable distribution. The marriage between appellant and respondent has been nullified for the reason that it was void *ab initio* and, as a matter of course, there could be no community property. *In re Sloan's Estate*, 50 Wash. 86, 96 Pac. 684, 17 L. R. A. (N. S.) 960. Prior to the invalid marriage, the real estate belonged to respondent. Keeping pace with the rapid growth of the city of Seattle, it has enhanced in value. Appellant did certain work towards its improvement, but was compensated by respondent for the greater portion of his work and materials which he furnished. She paid all taxes, special assessments and insurance charges. Credible evidence in the record shows that

improvements now on the property, including those made by appellant, add little or nothing to its value; that the principal value is in the land itself irrespective of the improvements. The alleged agreement relative to the real estate, pleaded in the answer and claimed by appellant, was not sustained by the evidence. The evidence does show that appellant has been guilty of habitual drunkenness; that he violently abused and mistreated respondent; that she was compelled to leave him; and that he did not provide for her as he should have done. Under the circumstances and facts thus shown, we are unable to conclude that the trial judge abused his discretion in the disposition of the property. On the contrary, we are satisfied that justice has been done.

The judgment is affirmed.

PARKER, CHADWICK, and GOSE, JJ., concur.